UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                   :

LIFETREE TRADING PTE., LTD.,          :

                                   :

                       Plaintiff,   :

                                   :

                -v-                :

WASHAKIE RENEWABLE ENERGY, LLC,   :       14-CV-9075 (JPO)
ISAIAH KINGSTON, JACOB KINGSTON,     :
RACHEL KINGSTON, and WASHAKIE     :      OPINION AND ORDER
ENTITY #1, WASHAKIE ENTITY #2,      :
WASHAKIE ENTITY #3, WASHAKIE       :
ENTITY #4, and WASHAKIE ENTITY #5, the  :
last five names being entities currently unknown  :
to plaintiff but believed to have entered into a  :
contract with, and/or perpetuated a fraud     :
against, plaintiff,                      :

                                   :

                       Defendants.  :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      This diversity action concerns a contract for $90 million of biodiesel fuel.[1]  Plaintiff

LifeTree Trading PTE., LTD. ("LifeTree") alleges that, after agreeing to purchase the fuel, and

after LifeTree had obtained and stored a portion of the fuel, Defendant Washakie Renewable

Energy, LLC ("Washakie") reneged, refusing to pay for or accept delivery of the fuel.  LifeTree

claims that Washakie, along with Washakie's Chief Financial Officer, Isaiah Kingston

("Kingston"), and five unknown Washakie-related entities (collectively, "Defendants"), are

---

[1] The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), because Plaintiff
is a company incorporated in Singapore and with its primary place of business in Singapore;
Defendants are citizens of Utah; and the amount in controversy exceeds $75,000.  (Dkt. No. 19
("Am. Compl.") ¶¶ 7-12; Dkt. No. 55 ("Response to Order to Show Cause") ¶¶ 4-11.)  In so
holding, the Court deems paragraphs 8 and 9 of the Amended Complaint amended to include
Plaintiff's proposed changes.  (*See* Response to Order to Show Cause, Ex. D.)

liable for damages that resulted from the breach.[2]  Now before the Court are two motions: Defendants' motion to partially dismiss the Amended Complaint, and LifeTree's motion for summary judgment on its breach of contract claim, as to the issue of liability only.  For the reasons that follow, Defendants' motion to dismiss is granted in part and denied in part, and LifeTree's motion for summary judgment is denied.

## I.      Procedural Background

LifeTree filed the Complaint in this action on November 14, 2014.  (Dkt. No. 1.)  The original Complaint asserted two claims: first, it alleged a breach of contract against Washakie, Isaiah Kingston, and five unknown Washakie entities; and second, it alleged fraudulent inducement against Washakie, Isaiah Kingston, and two other individual executives of Washakie.  (*Id.*)  On January 16, 2015, Defendants moved to dismiss the Complaint on the grounds that LifeTree had failed to state a claim for fraudulent inducement or breach of contract, and that the Court lacked personal jurisdiction over the three individual defendants with respect to the fraud claims.  (Dkt. Nos. 13-14.)  Rather than respond to the motion to dismiss, LifeTree filed an Amended Complaint, again asserting claims for breach of contract and fraudulent inducement.  (Dkt. No. 19.)

On February 27, 2015, Defendants moved to partially dismiss the Amended Complaint, for reasons similar to those stated in the first motion to dismiss.  (Dkt. No. 22.)  LifeTree simultaneously moved for partial summary judgment on the issue of Washakie's liability for breach of contract.  (Dkt. No. 28.)

---

[2] The caption also names Jacob Kingston and Rachel Kingston, who are alleged to be Washakie executives.  As explained below, the claims against those parties have been voluntarily dismissed by LifeTree.

2

On March 18, 2015, LifeTree voluntarily withdrew its claim against all Defendants for fraudulent inducement, leaving only the breach of contract claim against Washakie, Isaiah Kingston, and the unknown Washakie entities.[3]  (Dkt. No. 32.)  After the notice of voluntary dismissal was filed, the parties limited their briefing on both motions to issues concerning the breach of contract claim.  LifeTree responded to the motion to dismiss on April 17, 2015 (Dkt. No. 35), and Defendants responded to the motion for summary judgment that same day (Dkt. No. 36).  Both parties filed reply memoranda in support of their motions on May 8, 2015.  (Dkt. Nos. 43, 46, 48.)

## II.    Motion to Dismiss

### A.    Background

The following facts, taken from the Amended Complaint, are assumed true for the purpose of resolving the motion to dismiss.[4]

In early 2014, Washakie sought an agreement with LifeTree for the purchase of Argentine Soy Methyl Ester ("SME"), a form of biodiesel fuel.  (Am. Compl. ¶ 15.)  After negotiations, LifeTree and Washakie entered into a written agreement in May 2014.[5]  (*Id.* ¶¶ 16, 20; *id.* Ex. A ("Contract").)  The Contract, dated May 6, 2014, is signed by Isaiah Kingston, Washakie's Chief Financial Officer, and William Rooz, the Chief Executive Officer ("CEO") of LifeTree, and purports to be an agreement between LifeTree and "Washakie Renewable Energy

---

[3] Accordingly, Defendants' motion to dismiss the fraudulent inducement claim is denied as moot.

[4] Because LifeTree has voluntarily dismissed the fraudulent inducement claim, the Court does not include the facts relevant to that claim.

[5] For the purpose of the negotiations, LifeTree engaged LifeTree Renewable Energy, LLC, based in Suffern, New York.  (Am. Compl. ¶ 17.)

Inc."[6]  (Contract at 1, 4; Am. Compl. ¶¶ 9, 28.)  The Contract is composed of two parts: first, the

"underlying contract," which is labeled "Seller's Biodiesel Sales Contract #1095-S" and contains

conditions concerning the unique agreement between LifeTree and Washakie; and, second, Form

51 of the Federation of Oils, Seeds and Fats Associations Limited ("FOSFA 51"), which is

incorporated into the underlying contract to the extent that its provisions do not conflict with

those in the underlying contract.  (Am. Compl. ¶ 21; Contract at 3-4.)

 Under the terms of the Contract, Washakie agreed to purchase from LifeTree, and

LifeTree agreed to sell to Washakie, approximately 90,000 metric tons of SME at a price of

$1,015 per metric ton, for an aggregate purchase price of over $90 million.  (Am. Compl. ¶¶ 2,

24; Contract at 2.)  The SME was to be delivered in three equal shipments of approximately

30,000 metric tons each, the first in June 2014, the second in August/September 2014, and the

final shipment in the "last quarter" of 2014.  (Am. Compl. ¶ 24; Contract at 2.)  The fuel was to

be shipped from Argentina to Houston, Texas, or Brownsville, Texas.  (Contract at 2.)

 The Contract further provides that payment for the SME was due "by wire transfer within

24 hours of presentation of documents to buyer and covering one hundred percent (100%) of

shipment.  (*Id.* at 3.)  Initial payment would be based upon the "provisional weighing, sampling

and assaying" that was to take place upon loading of the material in Argentina.  (*Id.* at 2.)  Upon

arrival of the shipment in Texas, the SME was again to be weighed, sampled, and assayed, and

the initial payment adjusted based on the final measurements.  (*Id.*)  The Contract further states

that such payment:

> shall be guaranteed by an irrevocable stand by letter of credit to be
> opened promptly and valid through February 28, 2015, covering
> full amount of a 30,000 MT shipment plus 5% and to be

---

[6] The original capitalization from the Contract is altered throughout.

> replenished immediately, if it is drawn upon or if contract is
> extended.

(*Id.* at 3; Am. Compl. ¶ 27.)

Finally, as relevant here, the Contract includes a force majeure clause that provides terms governing the prevention or delay of the shipment due to acts of God or other unexpected occurrences.  (Contract at 4.)  The Contract also contains a jurisdictional clause providing that "any controversy or claim arising out of or relating to" the Contract "or alleged breach thereof, shall be determined in New York in accordance with New York law."  (Contract at 4.)

"In reliance on the Contract," LifeTree "purchas[ed], secur[ed] and prepar[ed] the June Shipment of 30,000 tons of SME for timely delivery to Washakie."  (Am. Compl. ¶ 30.) Washakie, however, did not obtain a letter of credit to guarantee its payments under the Contract. (*Id.* ¶ 31.)  Washakie also did not accept the June 2014 shipment of SME and failed to pay for it. (*Id.*)

Various correspondence between the parties followed.  On June 9, 2014, Washakie's CEO, Jacob Kingston, wrote to Rooz, LifeTree's CEO, stating that he was seeking to "resolve" the matter of obtaining a letter of credit.  (*Id.* ¶ 32.)  On June 19, 2014, Rachel Kingston, a Project Manager at Washakie, informed Rooz that "[Washakie] will take [the June Shipment] at a later date."  (*Id.* ¶¶ 11, 33 (alterations in original; internal quotation marks omitted).)  A month later, Rachel told Rooz by e-mail that Washakie would "'have to postpone' complying with the terms of the Contract until later in the year."  (*Id.* ¶ 33.)

As a result of Washakie's refusal to pay for and accept delivery of the first SME shipment, LifeTree asserts that it "incur[red] increasing and significant expenses," including the cost to "swap" the cargo for other SME on the market, the cost of storing the cargo, and harm to LifeTree's business reputation.  (*Id.* ¶¶ 34-37.)  LifeTree informed Washakie of these costs as

they were incurred, and asked Washakie to "clarify" its position and to "mitigate" LifeTree's mounting damages. Washakie ignored these requests. (*Id.* ¶¶ 37-38.) In October 2014, Rooz, acting "in desperation," told Washakie that he would "pretty much do anything" in order "to accommodate [Washakie]." He offered to reduce the amount of SME to be sold to Washakie; to reduce the price; to finance the cargo to permit Washakie to draw on the material on a schedule; or to sell the material at a loss in exchange for Washakie's compensating LifeTree for the difference. Washakie did not accept any of these options. "In fact, since October 7, 2014, Washakie has refused to communicate with LifeTree in any meaningful way to discuss its performance under the Contract." (*Id.* ¶ 39.)

In communications dated October 20 and October 31, 2014, LifeTree's corporate counsel informed Washakie that LifeTree would commence the present action. (*Id.* ¶ 40.) On December 15, 2014, after LifeTree had initiated this action, Washakie's general counsel informed LifeTree by letter "that [the Contract] between Washakie Renewable Energy, LLC . . . and Life Tree Trading PTE LTD dated May 6, 2014 . . . is and has been cancelled and should be deemed null and void due to, among other things, Force Majeure and impossibility." (*Id.* ¶ 41 (alteration in original).) In particular, Washakie claimed that the parties had conditioned Washakie's performance under the Contract on, *inter alia*, Washakie's ability to secure a letter of credit from a bank in Turkey, and that "certain unspecified events in Turkey and Argentina" rendered Washakie's performance impossible. (*Id.* ¶ 42.)

To date, Washakie has refused to pay for or accept shipment of any of the 90,000 metric tons of SME. (*Id.* ¶ 44.)

**B.      Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In assessing the sufficiency of the complaint, a court may consider "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations and internal quotation marks omitted). Accordingly, in resolving the present motion to dismiss, the Court considers the Amended Complaint, as well as the Contract, which is attached to the Amended Complaint as Exhibit A.

## C. Discussion

Defendants do not seek dismissal of the entire Amended Complaint. Rather, they move to dismiss just two discrete portions of the action. First, they seek dismissal of LifeTree's claims against Isaiah Kingston and the five unknown Washakie entities. Second, they move to dismiss LifeTree's claim that it is owed incidental costs "of whatever nature" under the incorporated provisions of FOFSA 51.[7]

---

[7] The motion to dismiss also requested the dismissal of the fraudulent inducement claim against Isaiah Kingston (and the other individual defendants) for lack of personal jurisdiction. (Dkt. No. 23 ("Def. MTD Memo") at 16-18.) Kingston also requests the dismissal of the breach of contract claim for lack of jurisdiction. (*Id.* at 19.) Because the breach of contract claim against Kingston is dismissed on other grounds, the Court need not reach this issue.

### 1.    Isaiah Kingston and the Five Unknown Entities

Defendants argue that Kingston, as a Washakie executive, cannot be held personally liable for a breach of contract absent an intent to be personally bound by the contract.  (Dkt. No. 23 ("Def. MTD Memo") at 18-19.)  They further contend that the breach of contract claim against the five unknown entities should be dismissed because it is "ridiculous."  (*Id.* at 19.)

LifeTree counters that it has named Isaiah Kingston and the five unknown entities as defendants in this action solely because the Contract contains a "scrivener's error": it was entered into by "Washakie Renewable Energy *Inc.*," rather than Defendant Washakie Renewable Energy *LLC*.  (Dkt. No. 35 ("Pl. MTD Response") at 3.)  "[I]n the highly unlikely event that the Court concludes that [Washakie] is not the true party to the agreement," LifeTree says, it "simply reserve[s] the right to hold" Washakie's signatory to the contract, Isaiah Kingston, "and/or other Washakie unknown entities liable under the contract."  (Pl. MTD Response at 4-5 (citing, *inter alia*, Restatement (Third) of Agency § 6.04).)

Although LifeTree's concern may have been justified when it initiated this action, it has since become unwarranted.  Washakie has conceded that the use of the suffix "Inc." rather than "LLC" in the contract was error, and that, despite this error, it is bound by the contract.  (*See* Dkt. No. 43 ("Def. MTD Reply") at 2-3; *see also* Dkt. No. 36 ("Def. MSJ Opp.") at 3-4 ("No company named Washakie Renewable Energy LLC has ever existed. . . . [A LifeTree executive] thus made a mistake when he typed 'Inc.' instead of 'LLC' on the Contract."); Dkt. No. 42 ("Def. 56.1") ¶¶ 23-24 (same).)  For this reason, the Court concludes that there can be no dispute that Washakie is the true counterparty to the agreement.  Because LifeTree has not asserted any

other reason for naming Isaiah Kingston and the five unknown Washakie entities as defendants in this action, the claims against these parties are dismissed.[8]

## 2. Incidental Costs of "Whatever Nature"

Defendants argue that that LifeTree's claim that it is owed incidental costs "of whatever nature" must be dismissed, as it relies on an erroneous interpretation of paragraph 14 of the FOSFA 51, and therefore fails as a matter of law.  (Def. MTD Memo at 19-20; *see* Am. Compl. ¶ 61.)

The Amended Complaint states that the incidental costs associated with Defendants' breach include:

> (i) carrying and storage costs LifeTree is obligated to pay to its suppliers; (ii) hedging costs incurred in reliance on Washakie's anticipated performance under the Contract; and (iii) costs incurred through 'swapping' of the June Shipment, which was done at [Washakie's] explicit request.

(Am. Compl. ¶ 61.)  The Amended Complaint further states that LifeTree "has suffered severe reputational harm in connection with its bank, shipper and, most importantly, suppliers in Argentina and elsewhere as a result of [Defendants'] deceptions regarding the June Shipment," and that LifeTree's "cost of doing business in Argentina and elsewhere has risen significantly as a direct result of Washakie's breach."  (*Id.*)

Defendants are incorrect that LifeTree relies only on paragraph 14 of FOSFA 51 in claiming these incidental damages: LifeTree cites New York's Uniform Commercial Code as well.  (Am. Compl. ¶ 61 (citing N.Y. U.C.C. § 2-710).)  In any event, the Court need not decide whether particular incidental costs are recoverable at this stage in the proceedings, when liability has not yet been determined.  *See Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 393

---

[8] Because the allegations against Defendants Rachel Kingston and Jacob Kingston have been voluntarily dismissed by LifeTree, Washakie is the only remaining defendant.

(S.D.N.Y. 1988) (holding, on a motion to dismiss, that "it need not appear that plaintiff can

obtain the particular relief prayed for, as long as the court can ascertain that some relief may be

granted" (internal quotation marks omitted)).  Defendants' motion to dismiss these costs is

denied without prejudice to raising the issue at a later stage.

## III.    Motion for Summary Judgment

The Court now turns to LifeTree's motion for summary judgment, which LifeTree filed

simultaneously with Defendants' motion to dismiss, and prior to any discovery in this action.

### A.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see*

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A fact is material if it "might affect the

outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could

find in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986).

"It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy*

*Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).  If the movant meets this

initial burden of production, the non-moving party must then identify specific facts

demonstrating a genuine issue for trial.  *Anderson*, 477 U.S. at 250-51.  In determining whether

there is a genuine dispute as to a material fact, the court views all evidence in the light most

favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *See*

*Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009).  The

court's role is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Mach.*

*Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).   Rather, "it is confined to deciding whether a rational juror could find in favor of the non-moving party."   *Id.* (citing *Anderson*, 477 U.S. at 249).

In this case, LifeTree has moved for summary judgment prior to discovery.   Although a pre-discovery motion is permitted under Federal Rule of Civil Procedure 56, it should be granted "[o]nly in the rarest of cases" because "[t]he nonmoving party must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment." *Hellstrom v. U.S. Dep't of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000) (internal quotation marks omitted).   "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . defer considering the motion or deny it."   Fed. R. Civ. P. 56(d); *see also Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 304 (2d Cir. 2003) ("[S]ummary judgment may be inappropriate where the party opposing it shows that he cannot at the time present facts essential to justify his opposition." (internal quotation marks and ellipsis omitted)).

### B.   Discussion

LifeTree moves for summary judgment on liability only.   It argues that it has satisfied the three elements necessary to prove that Washakie is liable for breach of contract under New York law,[9] namely (1) that the parties had an agreement; (2) that LifeTree performed on the agreement; (3) that Washakie breached the agreement by failing to perform; and (4) that Washakie's breach caused LifeTree damages.   (Dkt. No. 31 ("Pl. MSJ Memo") at 6 & n.3.)   *See Clearmont Prop., LLC v. Eisner*, 872 N.Y.S.2d 725, 728 (N.Y. App. Div. 3d Dep't 2009); *see*

---

[9] Washakie's arguments are made on the basis of New York law, and Defendants make no claim of any conflict.   "The parties' briefs assume that New York law controls, and such implied consent is sufficient to establish choice of law."   *Chau v. Lewis*, 771 F.3d 118, 126 (2d Cir. 2014) (internal quotation marks and ellipsis omitted).   Furthermore, as noted above, the Contract states that it is to be "determined in accordance with New York law."   (Contract at 4.)

*also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004).

Washakie does not dispute most of the facts alleged by LifeTree in the Amended Complaint, which the Court has recited above. Washakie concedes that it signed a contract to purchase over $90 million worth of SME from LifeTree (Def. 56.1 ¶¶ 3-4), and that Exhibit A to the Amended Complaint is an accurate copy of that Contract. Further, it does not meaningfully contest LifeTree's assertion that LifeTree performed under the Contract by obtaining the first installment of the fuel; it merely states that it lacks knowledge or information sufficient to form a belief as to the accuracy of this allegation at this point in the litigation. (*Id.* ¶ 10.)

Washakie contends, rather, that summary judgment is not warranted because it did not breach the Contract when it failed to pay for and accept delivery of the fuel. It alleges that the Contract was "subject to the condition precedent that [Washakie] had to obtain a [line of credit] from a Turkish bank for the Contract to be effective," that "the condition precedent never occurred" and "thus the Contract was never effective." (Def. 56.1 ¶ 3; *see* Def. MSJ Opp. at 1-2.) LifeTree counters that the alleged oral condition precedent contradicts the language in the written Contract, which makes obtaining a line of credit mandatory and not conditional. Therefore, LifeTree contends, consideration of the alleged condition precedent is barred as a matter of law. (Dkt. No. 46 ("Pl. MSJ Reply") at 1-2.)[10]

The parol evidence rule "generally prohibits the admission of extrinsic evidence of prior or contemporaneous oral agreements to explain the meaning of a contract that the parties have

---

[10] In its opening brief, LifeTree anticipated various other arguments that it expected Washakie to make it opposition to the motion for summary judgment, including impossibility and force majeure. (*See* Pl. MSJ Memo at 4, 8 n.5, 11-14, 16-19.) Washakie has not asserted those arguments, however, and therefore the Court does not address them.

reduced to an unambiguous integrated writing." *Gualandi v. Adams*, 385 F.3d 236, 242 (2d Cir.

2004). However, "[t]he admissibility of oral testimony establishing a condition precedent to an

otherwise integrated agreement is regarded as an exception to the parol evidence rule." *Morgan*

*Stanley High Yield Sec., Inc. v. Seven Circle Gaming Corp.*, 269 F. Supp. 2d 206 (S.D.N.Y.

2003) (citing *VJK Prods., Inc. v. Friedman/Meyer Prods., Inc.*, 565 F. Supp. 916, 919 (S.D.N.Y.

1983)). Under this exception, "[p]arol testimony is admissible to prove a condition precedent to

the legal effectiveness of a written agreement, if the condition does not contradict the express

terms of such written agreement." *Edelman Arts, Inc. v. Art Int'l (UK) Ltd.*, 841 F. Supp. 2d

810, 827 (S.D.N.Y. 2012) (quoting *Hicks v. Bush*, 180 N.E.2d 425, 427 (N.Y. 1962)) (internal

quotation marks omitted).

The line between consistent and inconsistent conditions precedent, however, "may be a

fine one." *Id.* at 827 (internal quotation marks omitted). As the New York Court of Appeals

noted in *Hicks v. Bush*:

> A certain disparity is inevitable, of course, whenever a written
> promise is, by oral agreement of the parties, made conditional upon
> an event not expressed in the writing. Quite obviously, though, the
> parol evidence does not bar proof of every orally established
> condition precedent, but only of those which in a real sense
> contradict the terms of the written agreement.

180 N.E.2d at 427. In order for an oral condition precedent to contradict a written contract, "it is

not sufficient that the existence of the condition is implausible. It must be impossible." *Hunt*

*Foods & Indus., Inc. v. Doliner*, 270 N.Y.S.2d 937, 940 (App. Div. 3d Dep't 1966).

The relevant language in the written Contract in the present action is as follows:

> Payments shall be guaranteed by an irrevocable stand by letter of
> credit to be opened promptly and valid through February 28, 2015,
> covering full amount of a 30,000 MT shipment plus 5% and to be
> replenished immediately, if it is drawn upon or if contract is
> extended.

(Contract at 3.)  LifeTree contends that the alleged oral condition precedent, under which

Washakie is not obliged to render payment for the SME *unless* it is able to obtain a letter of

credit, contradicts this clause, which requires that Washakie guarantee payment "by an

irrevocable stand by letter of credit to be opened promptly and valid through February 28, 2015."

This argument is unpersuasive.  The clause that LifeTree points to "clearly refers to the method

of payment, rather than indicating any unconditional promise to pay."  *Morgan Stanley High*

*Yield Sec., Inc.*, 269 F. Supp. 2d at 218 (S.D.N.Y. 2003).  That Washakie was required to

guarantee payment by letter of credit is not inconsistent with a condition precedent that payment

be tendered only if a letter of credit is, in fact, obtained.  Nor does the written Contract's

requirement that the letter of credit be opened "promptly" contradict, in a real sense, the

purported condition precedent.  Rather, this provision merely mandates that, if a letter of credit is

in fact available to Washakie, it be opened "promptly" and remain valid through February 2015.

*See Edelman Arts Inc.*, 841 F. Supp. 2d at 827-28 (citing *Morgan Stanley High Yield Sec., Inc.*,

269 F. Supp. 2d at 218).

LifeTree's two remaining arguments also fail.  First, LifeTree argues that the Contract is

fully integrated and therefore that any terms not included therein must be excluded from

consideration.  (Pl. MSJ Reply at 3-5.)  Even a fully integrated contract, however, may be

supplemented by an oral condition precedent, so long as the condition precedent does not

contradict the terms in the written agreement.  *See, e.g.*, *Cohen v. Eelphant Wireless, Inc.*, No. 03

Civ. 4058 (CBM), 2004 WL 1872421, at *9 (S.D.N.Y. Aug. 19, 2004) (considering the oral

condition precedent exception to the parole evidence rule after deeming the contract at issue an

integrated one).

Second, LifeTree argues that the alleged condition precedent must be excluded because if agreed upon, it surely would have been included in the parties' writing.  (Pl. MSJ Reply at 5-8.) LifeTree relies for this argument on the third comment to N.Y. U.C.C. § 2-202, which states that "[i]f the additional terms are such that, if agreed upon, they would certainly have been included in the document in view of the court, then evidence of their alleged making must be kept from the trier of fact."  The rule permitting the admission of a condition precedent so long as it does not contradict the terms of the written agreement, however, "has a long history in the common law," "was adopted in New York well before the enactment of the UCC,"  and "has survived the application of UCC § 2-202."  *Conmar Int'l Trading Corp. v. Wearever-Proctor Silex Corp.*, No. 86 Civ. 8691 (LBS), 1987 WL 13178, at *2-3 (S.D.N.Y. June 19, 1987).  Because the Court has determined that the alleged condition precedent does not contradict the written agreement, the issue whether it is the type of clause that would "certainly have been included in the document" is without import.

The Court concludes that Washakie is not barred, as a matter of law, from asserting that the Contract for the sale of $90 million of SME was orally conditioned on Washakie's obtaining a letter of credit from a Turkish bank.[11]

The question remains whether Washakie has identified sufficient evidence such that a reasonable jury could find that the parties in fact agreed to the alleged condition precedent.  The

---

[11] As a second ground for the Court's decision that the oral condition precedent may be considered, the Court concludes that there exists a genuine issue of material fact as to whether obtaining a letter of credit as a condition to contractual performance in situations such as the one here constitutes a usage of trade as defined in N.Y. U.C.C. § 1-205, as Defendants argue.  (*See* Def. MSJ Opp. at 15-18.)  Evidence of a usage or trade, if it exists in this case, is admissible under N.Y. U.C.C. § 2-202 irrespective of whether the parties' written Contract is integrated and whether the usage or trade is of the kind that would certainly have been included in the written contract.  *See Conmar Int'l*, 1987 WL 13178, at *3.

Court concludes that it has, especially at this stage in the proceedings, where the parties have not yet engaged in discovery.  Washakie's evidence of the existence of a condition precedent includes evidence of prior dealings between the parties between May and October 2013 (Dkt. No. 39 ("Rachel Kingston Aff.") Exs. 23-38); correspondence between the parties concerning the present Contract (*id.* Exs. 1-22); and, most significantly, affidavits by two executives and one employee of Washakie who were privy to the negotiations surrounding the Contract, and who attest to the fact that both parties understood that the Contract was conditioned on Washakie's succeeding in obtaining a letter of credit from a Turkish bank (*See* Rachel Kingston Aff. ¶¶ 3-6, 11, 15; Dkt. No. 40 ("Isaiah Kingston Aff.") ¶¶ 3-4, 6-8; Dkt. No. 41 ("Jacob Kingston Decl.") ¶¶ 3-4, 6-7, 10-11).  Accordingly, the question whether there was in fact a condition precedent of the nature alleged by Washakie will, at the least, require discovery and, potentially, factfinding by a jury.  The motion for summary judgment is denied without prejudice to renewal after discovery has been completed.

16

III.    **Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint is GRANTED IN PART and DENIED IN PART.  Specifically, the claims against Isaiah Kingston and the five unknown Washakie entities for breach of contract are dismissed.  The claim for breach of contract against Washakie survives.

Plaintiff's Motion for Partial Summary Judgment is DENIED without prejudice to renewal.

Washakie shall answer the operative complaint on or before July 20, 2015.

The Motion to Dismiss the initial Complaint is DENIED as moot.

The Clerk of Court is directed to close the motions at Docket Numbers 13, 22, and 28.

SO ORDERED.

Dated:  June 29, 2015
        New York, New York

_____
          J. PAUL OETKEN
      United States District Judge