UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
LIFETREE TRADING PTE., LTD.,                                :
                                                            :
                                    Plaintiff,              :
                                                            :       14-CV-9075 (JPO)
                  -v-                                       :
                                                            :       OPINION AND ORDER
WASHAKIE RENEWABLE ENERGY, LLC,                             :
                                                            :
                                    Defendant.              :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

      This action involves a $90 million contract for biofuel that Plaintiff LifeTree Trading PTE., LTD. ("LifeTree") alleges was breached by Defendant Washakie Renewable Energy, LLC ("Washakie"). For the duration of the litigation, Washakie maintained that it was not liable for breach due to the failure of an oral condition precedent. Washakie has now abandoned that position, conceding liability and admitting that its prior submissions to the Court—including statements made under oath by three of Washakie's representatives—were untrue. At this stage, Washakie challenges only LifeTree's allegation of damages. Before the Court are three motions: LifeTree's motion for summary judgment and for sanctions (Dkt. No. 76); Washakie's motion for summary judgment (Dkt. No. 83); and Washakie's motion to exclude LifeTree's expert (Dkt. No. 97). For the reasons that follow, LifeTree's motion is granted in part and denied in part, Washakie's motions are denied, and the Court awards sanctions for Washakie's fraud on the Court.

**I.    Background**

      Familiarity with the background of this litigation, as set out in the Court's prior opinion, is presumed. *See Lifetree Trading PTE., LTD. v. Washakie Renewable Energy, LLC*, No. 14 Civ.

9075, 2015 WL 3948097 (S.D.N.Y. June 29, 2015).

For the duration of this litigation, Washakie maintained that it was not liable for breach of contract due to the failure of an oral condition precedent requiring Washakie to obtain a line of credit from a Turkish bank. *Id.* at *7. Washakie supported this claim with sworn affidavits from Rachel Kingston, Isaiah Kingston, and a declaration from Jacob Kingston; the Kingstons were all employees or executives of Washakie. (Dkt. Nos. 39, 40, 41.) These statements submitted to the Court specifically described the negotiations between the parties and their agreement to the oral condition precedent to the contract, which was itself for 90,000 metric tons of soy methyl ester ("SME"). (*Id.*) The statements also described Washakie's holdings in Turkey and the parties' prior contractual dealings, which were alleged to have also included similar conditions precedent. (*Id.*)

It was on the basis of the claimed existence of the condition precedent that the Court denied LifeTree's pre-discovery motion for summary judgment. *Lifetree*, 2015 WL 3948097, at *9. In denying summary judgment, the Court relied heavily on the Kingstons' statements: "Washakie's evidence of the existence of a condition precedent includes . . . most significantly, affidavits by two executives and one employee of Washakie who were privy to the negotiations surrounding the Contract, and who attest to the fact that both parties understood that the Contract was conditioned on Washakie's succeeding in obtaining a letter of credit from a Turkish bank." *Id.* (citations omitted).

That was two years ago. Since that time, the parties have continued to litigate this action and take discovery on this theory of the case. And discovery yielded some significant revelations: namely, that Washakie did not have the holdings in Turkey that the Kingstons had described in their affidavits, and that, as the Kingstons ultimately testified in deposition, contrary

2

to their prior sworn statements, the parties' prior contractual dealings did not include similar conditions precedent. (Dkt. No. 77 at 20.) Accordingly, LifeTree now moves for summary judgment and seeks sanctions for Washakie's coordinated misstatements to the court. (*Id.* at 20-21.)

In response to LifeTree's motion, Washakie takes a surprising tack. In its own motion for summary judgment, Washakie wholly abandons the condition precedent theory of non-liability that it had maintained for the duration of this action. (Dkt. No. 90 at 2 n.3.) Along with its motion, Washakie submits sworn affidavits from Rachel, Isaiah, and Jacob Kingston withdrawing their previous sworn statements and affirming that they were "untrue." (Dkt. Nos. 84, 85, 86.) This bears repeating: The Kingstons submitted sworn statements to the Court admitting that their previous sworn statements to the Court were not true. As a result, Washakie concedes that it breached the contract with Lifetree and contests only LifeTree's requested damages. (Dkt. No. 90 at 1.) Washakie also seeks to exclude the testimony of LifeTree's damages expert, J. Stephen Lucas. (Dkt. No. 97.) Washakie does not oppose LifeTree's request for sanctions.

The Court first addresses LifeTree's request for sanctions; second, it addresses Washakie's motion to exclude Lifetree's expert; and third, it addresses the cross-motions for summary judgment on the issue of damages.

## II. Sanctions

### A. Legal Standard

"A Court has the inherent authority to sanction a party for committing a fraud on the

court."[1] *Bravia Capital Partners Inc. v. Fike,* No. 09 Civ. 6375, 2015 WL 1332334, at *3 (S.D.N.Y. Mar. 25, 2015). Fraud on the court exists where there is clear and convincing evidence that a party has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter" by "unfairly hampering the presentation of the opposing party's claim or defense." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (quoting *McMunn v. Mem'l Sloan–Kettering Cancer Ctr.*, 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)).

Where a court finds fraud on the court, a variety of sanctions are available, including an award of attorney's fees, an adverse jury instruction, or the entry of default judgment against the offending party. *See Bravia Capital Partners Inc.*, 2015 WL 1332334, at *3 (citing *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 22 (S.D.N.Y. 2010)). However, a sanction that has the effect of ending the case and granting judgment to one of the parties is "so harsh a remedy that it should be imposed only in the most extreme of circumstances." *Sanchez v. Litzenberger*, No. 09 Civ. 7207, 2011 WL 672413, at *5 (S.D.N.Y. Feb. 24, 2011) (quoting *Bower v. Weisman*, 674 F. Supp. 109, 112 (S.D.N.Y. 1987)).

**B.     Discussion**

Here, there can be little doubt that Washakie committed fraud on the court. Washakie posited and forced LifeTree to oppose—for over two years—a theory of the case that it knew to be bogus. It submitted three sworn statements, which the Court relied upon in denying summary judgment, that it later admitted were untrue. Washakie came clean only when its story began to

---

[1] The Court notes that sanctions are not being sought under Federal Rule of Civil Procedure 11 for attorney misconduct—there is no allegation by LifeTree, and no reason to believe, that counsel for Washakie was aware of or involved in Washakie's misconduct. *See* Fed. R. Civ. P. 11.

4

unravel, after the Court rejected its attempt to shield discovery into its supposed assets in Turkey. Washakie has not opposed Lifetree's request for sanctions—likely because it now recognizes that its conduct in this litigation amounts to an "archetypical" case of fraud on the court. *See Bravia Capital Partners Inc.*, 2015 WL 1332334, at *3 ("The archetypical fraud on the court occurs 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process.'" (quoting *McMunn*, 191 F. Supp. 2d at 445)).

The difficult question for the Court here is to determine the appropriate sanction to be imposed. LifeTree asks that the Court enter judgment against Washakie; in the alternative, LifeTree asks for a jury instruction about Washakie's misrepresentations, or a request that Washakie's executives be forced to personally pay for Lifetree's attorney's fees incurred in connection with its first motion for summary judgment. (Dkt. No. 77 at 21.)

The Court is moved by the gravity of Washakie's conduct. The coordinated misstatements by Washakie's principals, made under penalty of perjury, misled the Court in its decision on the previous motion for summary judgment. Their continued fraud prolonged this action, forcing costly and time-consuming discovery on what appeared to be a central issue in the case but was, at bottom, fabricated by Washakie. Accordingly, a severe sanction is unquestionably justified.

However, the Court also takes into consideration Washakie's acknowledgment of its misconduct and its attempt to withdraw the statements it knew to be false—the Court finds further misconduct to be highly unlikely. These factors weigh against imposing a case-ending sanction. *See McMunn*, 191 F. Supp. 2d at 446.

Balancing these considerations, the Court declines to order a default judgment against Washakie, but does order that Washakie is required to compensate LifeTree for its attorney's

5

fees and costs incurred *for the entire duration* of this action. Moreover, in the event that this action proceeds to trial, LifeTree is entitled to a jury instruction about Washakie's misstatements, instructing the jury to account for Washakie's misstatements in assessing the credibility of Washakie's representatives.

## III. Motion to Strike

The Court now turns to Washakie's motion to strike the report of J. Stephen Lucas. (Dkt. No. 97.) Lucas's report is the primary foundation for LifeTree's claim for damages.

### A. Legal Standard

It is well settled that a court may rule on a motion to strike expert testimony at the summary judgment stage, and where, as here, the evidentiary record is well developed, the court may do so without holding a hearing. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 581 (S.D.N.Y. 2007).

Under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), courts engage in a two-step inquiry in determining whether to allow expert testimony. First, courts consider whether the expert herself is sufficiently qualified to testify. *See Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013). Second, courts consider whether the testimony "has a sufficiently reliable foundation." *Id.* (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). In considering reliability, courts consider indicia of reliability, including "(1) that the testimony is grounded on sufficient facts or data; (2) that the testimony 'is the product of reliable principles and methods'; and (3) that 'the witness has applied the principles and methods reliably to the facts of the case.'" *Amorgianos*, 303 F.3d at 265 (quoting Fed. R. Evid. 702). These factors, however, are not binding—the inquiry is a "flexible" one, *id.* at 266, and the exclusion of an expert is "the exception rather than

the rule," *Vazquez v. City of N.Y.*, No. 10 Civ. 6277, 2014 WL 4388497, at *12 (S.D.N.Y. Sept. 5, 2014) (quoting *Floyd v. City of N.Y.*, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012)). Further, this analysis does not necessarily require an expert witness to testify with exact precision or through the use of scientific methodology; the reliability inquiry often focuses on the experiential knowledge of the expert. *Davis*, 937 F. Supp. 2d at 412 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149-50 (1999)).

B.  Discussion

The Court first considers Lucas's qualifications to serve as an expert on interpreting the biofuel contract between LifeTree and Washakie. Lucas has been a participant in the biofuel trading industry—including procuring, contracting for, and selling biofuel products—for over forty years. (Dkt. No. 79-1.) He has significant experience in writing and negotiating contracts for the sale of biofuels, and has served as an expert witness in many similar matters. (*Id.*) Indeed, Washakie's own expert, Jess Hewitt, testified on deposition that she believed Lucas to be qualified to testify in this action. (Dkt. No. 92 at 6.)

Washakie's main argument against Lucas's qualification is that he does not have experience with contracts governed by Form 51 of the Federation of Oils, Seeds and Fats Association Limited ("FOSFA 51"), which is incorporated in the contract at issue here. (Dkt. No. 99 at 7.) However, LifeTree argues that nobody has ever served as an expert in a litigation involving the breach of a contract governed by FOSFA 51, because such disputes are generally resolved by arbitration in London, and this is the first such reported case in the United States. (Dkt. No. 95 at 23-24.) Moreover, an expert need not have identical prior experience to justify qualification, so long as the expert "stay[s] within the reasonable confines of [his] subject area." *Davis*, 937 F. Supp. 2d at 413 (quoting *Lappe v. Am. Honda Motor Co., Inc.*, 857 F. Supp. 222,

7

227 (N.D.N.Y. 1994)). Lucas's experience in the area of biofuel supply contracts is sufficiently related so as to justify his qualification as an expert in this action.

The Court next considers the second prong of the analysis—whether Lucas's testimony has a reliable foundation. Here Lucas's calculation is grounded in specific data and reliable calculation methods applied reliably. Lucas reached his conclusion by determining the damages available under the contract and New York law, determining the relevant date of default, applying the market price for the biofuel at issue on that date, and also calculating LifeTree's cost for the fuel it purchased for the first shipment under the contract. (Dkt. No. 79 at 8-12.) Lucas documents the inputs in his calculations and the path he followed to reach his aggregate damages amount. (*Id.*) To the extent that Washakie's expert disputes Lucas's conclusions, it is on factual rather than methodological or data-gathering grounds.

The bulk of Washakie's objections to Lucas's analysis relates to his choice of default date. (Dkt. No. 99 at 9-14.) However, for reasons discussed below, the appropriateness of Lucas's chosen date of default goes not to the reliability of his damages calculation, but rather to issues of fact addressed in the context of the motion for summary judgment.

Washakie also disputes the source of the price data that Lucas used in his calculations, arguing that it is unreliable because it would be inadmissible hearsay. (*Id.* at 14-16.) The relevant price data came from two sources. First, the market price for SME on the December 15, 2014, default date—$664.47 per metric ton—is evidenced by an email from J.J. Hinrichsen S.A., an independent specialist, to LifeTree dated December 15, 2014. (Dkt. No. 79 at 10 & n.11; Dkt. No. 79-4 at 48-50.) Though Washakie claims that this data is unreliable because it is hearsay, LifeTree counters—and the Court agrees—that it is reliable (and would be admissible) as a business record. *See* Fed. R. Evid. 803. Second, the data on the cost of SME for the first

shipment was provided by LifeTree itself. (Dkt. No. 79 at 8-9; Dkt. No. 79-4.) Again, this data is likely reliably sourced, as it is another business record. Moreover, Washakie's own expert confirmed the reliability of Lucas's sources and methods, and did not suggest alternative price data, which could also likely be independently verified given the relatively open market for such commodities. (Dkt. No. 92 at 171-75.)

Washakie's remaining arguments about Lucas's expert report—such as his failure to include a $180,000 deduction for insurance costs (on a $90 million contract), or the cost of freight—are insufficiently significant to justify excluding the report as unreliable and instead go to issues of fact. (Dkt. No. 90 at 8.) Damages need not be calculated with mathematical precision. A plaintiff "need only show a stable foundation for a reasonable estimate" of damages resulting from a breach of contract. *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 110 (2d Cir. 2007) (quoting *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977)). "Such an estimate necessarily requires some improvisation, and the party who has caused the loss may not insist on theoretical perfection." *Id.* at 111 (quoting *Entis v. Atl. Wire & Cable Corp.*, 335 F.2d 759, 763 (2d Cir. 1964)).

As mentioned above and discussed in depth below, the crux of the dispute between the parties on the appropriate amount of damages centers on the choice of default date. Assuming that LifeTree's expert has chosen the appropriate default date, the Court finds no reason to doubt the reliability of his calculation of damages or his qualifications as an expert. Any divergence between the damages calculations of LifeTree's and Washakie's experts goes to factual issues to be resolved by the finder of fact at trial.

## IV. Summary Judgment

### A. Legal Standard

A court may grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party, *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On summary judgment, the party bearing the burden of proof at trial must first provide evidence on each element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (citing Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 250-51). The court views all evidence "in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in its favor." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995). Summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Id.* (quoting *Lunds, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (internal quotation marks omitted).

### B. Discussion

Washakie has conceded liability for breach of contract. The parties, however, dispute the

correct amount of damages due to LifeTree as a result of Washakie's breach. The parties, accordingly, cross-move for summary judgment on the issue of damages. (Dkt. No. 76; Dkt. No. 83.) Washakie, in particular, argues that LifeTree has failed to adequately prove damages, but concedes that if the Court refuses to strike LifeTree's expert, the factual disputes about damages should preclude summary judgment. (Dkt. No. 90 at 9.)

The parties here arrive at vastly divergent damages figures. LifeTree's expert calculates damages to be $25,329,370; while Washakie's expert calculates damages to be just $765,370. (Dkt. No. 79 at 12; Dkt. No. 88 at 14.) The most significant factor driving this vast differential is that LifeTree's expert calculates damages on all three of the shipments of SME contemplated in the contract, whereas Washakie's expert considers only the first of these shipments. This, in turn, is driven by different assumptions about the appropriate default date from which to calculate damages. (The choice of default date also drives the relevant SME market price for calculating damages, which, according to FOSFA 51, is determined based "on the day of default." (Dkt. No. 87-2 ¶ 29.))

LifeTree posits a default date of December 15, 2014, "the date [Washakie] *itself* informed LifeTree that the Contract was cancelled," which came "after months of communications and assurances that [Washakie] would perform." (Dkt. No. 95 at 10.) Washakie, meanwhile, argues for a default date of May 19, 2014, "when Washakie had not promptly obtained a letter of credit to guarantee its payment for the first shipment of SME." (Dkt. No. 90 at 10.) Washakie further disputes the existence of any communications or assurances to LifeTree that it intended to perform under the contract. (*Id.* at 12.)

The parties' dispute about whether Washakie was in default on May 19, 2014, or not until December 15, 2014, raises a genuine dispute of material fact—particularly relating to whether

and to what degree Washakie provided assurances to LifeTree that it still intended to perform under the contract. This dispute precludes the grant of summary judgment for either party and is an issue to be resolved by a jury at trial.

**V.      Conclusion**

For the foregoing reasons, LifeTree's motion for summary judgment is GRANTED IN PART as to liability, and DENIED IN PART as to damages. Washakie's motion for summary judgment is DENIED. Washakie's motion to exclude J. Stephen Lucas is also DENIED. LifeTree's request for sanctions is GRANTED to the extent stated in this Opinion.

The parties are directed to file a status update with the Court proposing trial dates and a schedule for pretrial filings within 21 days of this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 76, 83, and 97.

SO ORDERED.

Dated:  June 2, 2017
        New York, New York

_____
J. PAUL OETKEN
United States District Judge